## ANNIE EAGLE AND ANOTHER v. NATIONAL FUNDS, INC.

154 N. W. (2d) 696.

December 1, 1967—No. 40,624.

 

*Marshall S. Snyder,* for appellants.

*S. Harry Gainsley* and *Gainsley & Gainsley,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

This is an appeal from a judgment of the district court in favor of defendant. Plaintiff Annie Eagle is the sole owner of all of the stock of plaintiff Eagle Nursing Home, Inc.[1] The defendant, National Funds, Inc., is engaged in the real estate business in Minneapolis. Plaintiff operates a nursing home in Bloomington, described in the complaint as Lots 1, 2, and 3, Block 11, Oxboro Heath, Hennepin County, Minnesota. Previously Annie Eagle and her daughter-in-law, Elna Eagle, operated a nursing home on Columbus Avenue South, Minneapolis. Desiring larger and more adequate premises, they entered into a written agreement dated April 22, 1963, with the defendant to purchase for $440,000 the premises in Bloomington on which defendant was then erecting a nursing home. Pursuant to the April 22nd agreement, the $440,000 was to be paid by the Eagles as follows: $50,000 by allowance for the conveyance of the Columbus Avenue property; $30,000 by purchasing and installing furniture, fixtures, and equipment in the Bloomington home; $246,000 by assuming a mortgage to be placed on the Bloomington property; and $114,000 to be paid according to the terms of a proposed contract for deed. Defendant in March 1963 had given a $246,000 mortgage to First Federal Savings and Loan Association of Minneapolis to secure a construction loan.

On December 1, 1963, a formal contract for deed was entered into between the defendant as first party and plaintiff Annie Eagle and Elna Eagle as second parties.[2] According to the terms of this contract (which

---

[1] Reference to plaintiff will include Annie Eagle and Eagle Nursing Home, Inc., except where the context requires a more specific reference.

[2] Elna Eagle is not a party to this lawsuit since she transferred all her interest in plaintiff Eagle Nursing Home, Inc., to plaintiff Annie Eagle on or about April 29, 1965, and previously Elna and Annie Eagle had transferred their interest in the property to the corporation.

is the basis for the obligations of the parties in this action), the defendant agreed to sell to Annie and Elna Eagle its Bloomington premises for $440,000, the same price as in the April 22nd agreement, but the payment arrangements were changed to read as follows: The $50,000 credit to the second parties (Eagles) for conveyance of their Columbus Avenue property remained the same; the $246,000 mortgage referred to in the April 22nd agreement was increased to $330,000, and was to be paid by the Eagles' assuming a mortgage of record in that amount against the Bloomington property in favor of Ben Franklin Savings & Loan Association; $30,000 was to be paid by their assuming a chattel mortgage in favor of Northern Finance Corporation against the personal property and equipment in the Bloomington premises (rather than by their purchasing and installing these items as referred to in the April 22nd contract); and $30,000, with interest at 6½ percent (instead of the $114,000 referred to in the April 22nd contract for deed) was to be paid in monthly payments of $537.72, beginning March 10, 1964, with the right to pay all or any part of the balance on that $30,000 at any time. The contract also provided that each monthly payment on the balance of $30,000, when made, should first be applied on accrued interest and the balance applied toward the reduction of the principal. The contract also provided that the aggregate of all of the above monthly payments during the first 60 months commencing March 10, 1964, should not exceed $3,568.38, and during the next 84 months should not exceed $2,903.83 per month.

The second parties also agreed to pay all taxes due and payable in 1964 and subsequently, to pay all special assessments, and to keep the premises insured for $400,000 against fire and windstorm.

The contract acknowledged that the parties "have respectively performed all of the terms and conditions of the agreement entered into by them under date of April 22, 1963." One additional reference to the April 22nd agreement is included in the December 1st contract, a provision that if any defaults occurred in the April 22nd agreement the defendant at its option, by written notice, could declare the December 1st contract canceled. The December 1st contract also provided that if the Eagles defaulted in the performance of any of the terms, covenants, and

conditions required to be performed by them under a lease between the parties dated April 22, 1963, covering the Columbus Avenue property, the same should constitute a default in the December 1st agreement.

It is apparent that the parties hereto interpret differently the provisions dealing with the amount of each monthly installment as set out in the December 1st contract. In that connection, defendant's bookkeeper, Mrs. Elizabeth P. Caye, testified that she determined that the real estate mortgage payment would be $2,177 and the chattel mortgage payment $650. The amount stated in the contract was $537.72, making a total of $3,364.72. The contract specified that the monthly payments should not exceed $3,568.38. However, plaintiff made a payment of $3,568.38 the first month ($203.66 per month more than the amount Mrs. Caye considered necessary). The bookkeeper further testified that she called Elna Eagle and told her that a payment of $3,568.38 per month was not required, but that Elna said that as far as she was concerned the contract did require that amount and that she was going to continue to pay it. The record reveals that the bookkeeper then informed Elna as follows: "Then we will apply it the best we can and give you credit." Plaintiff subsequently decided that the monthly payment could be reduced by $14.56, but continued to pay $3,553.82 each month—an excess, as defendant interprets the contract, of $189.10.

Plaintiff took possession of the Bloomington nursing home on December 12, 1963. It is admitted in the pretrial order that plaintiff paid defendant $54,257.81 up to April 30, 1965. This case involves a controversy originally over defendant's use of approximately $14,000 of that sum. It was agreed at the pretrial conference, however, that any recovery by plaintiff in this action "would be reduced by $5,450.10 representing the real estate taxes paid on the nursing home property April 1, 1965." Thus, it appears that the amount involved in this controversy is about $8,000.

Plaintiff's claim seems to revolve around a belief that some payments were used to satisfy defendant's obligations rather than plaintiff's. It is difficult to determine the basis for this contention as there is no evidence in the record of any misappropriation by defendant. There is no controversy over plaintiff's obligation to pay interest on the mortgages de-

scribed in the December 1st contract, taxes due in 1964, and special assessments from the time of occupancy in December.

There is ample evidence in the record to support the trial court's findings as to how the payments totaling $54,257.81, made from December 5, 1963, to April 30, 1965, were applied. It found that defendant made the following disbursements for plaintiff's benefit: Paid on the principal of the $330,000 Ben Franklin mortgage, $3,991.19; interest on said mortgage from December 8, 1963, to April 8, 1965, $26,781.10; paid on the principal of the Northern Finance mortgage, $9,750; extra labor and materials, $49.59; paid on the principal of the December 1st $30,000 contract, $7,351.94; interest on same, $2,349; real estate taxes, $5,460.10. Summarizing the court's findings, plaintiff paid defendant between December 5, 1963, and April 30, 1965, a total of $54,257.81; but defendant paid out for plaintiff's benefit during that period the sum of $55,732.92—or $1,475.11 in excess of what it received, which amount the court allowed defendant for its counterclaim. It ordered that judgment be entered accordingly.

On oral argument in this court, plaintiff's attorney acknowledged that his client's principal claim rested on the contention that about $8,000 of the $54,257.81 paid by plaintiff was applied by defendant for the payment of interest on the loan from the First Federal Savings and Loan Association of Minneapolis during the interval between the time plaintiff took possession of the Bloomington property in December 1963 and July 6, 1964, when the First Federal loan was paid out of the proceeds of the money borrowed from Ben Franklin.

Plaintiff argues that no part of the $54,257.81 paid by the Eagles should have been used to pay interest on the First Federal loan because although plaintiff and Elna Eagle agreed to pay the Ben Franklin loan they never agreed to pay First Federal.

According to the record, other than costs incidental to securing the loan Ben Franklin disbursed only $80,000 in December 1963, and it was not until July 7, 1964, that it paid off the First Federal mortgage and thus became the first mortgagee on the property. Prior to the time Ben Franklin disbursed the entire $330,000, interest was accruing to it only on the $80,000 which it actually disbursed. Since plaintiff had the

benefit of the entire $330,000 mortgage from December 1963, it would be inequitable to allow plaintiff to avoid paying interest on that amount simply because part of the $330,000 was furnished by First Federal and part by Ben Franklin between December 5, 1963, and July 6, 1964, when Ben Franklin paid off First Federal in full. In any event, plaintiff was not paying interest at any time on more than the $330,000 referred to in the mortgage.

We have considered other objections raised by plaintiff but find no reversible errors in connection with them.

Affirmed.